PUERTO RICO HOUSING AUTHORITY, Petitioner, *v.* DISTRICT COURT OF ARECIBO, Respondent. SAME, Plaintiff and Appellant, *v.* CARMELO J. COLÓN ET AL., and THE PEOPLE OF PUERTO RICO, represented by the Treasurer of Puerto Rico, Defendants and Appellees.

Nos. 1718 and 9584. Argued December 3, 1947.—Decided January 23, 1948.

R. B. Pérez Mercado for petitioner and appellant. *Francisco M. Susoni, Jr.,* and *Arturo Ortiz Toro,* for interveners, defendants in the main action, now appellees.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the Court.

On October 17, 1944, the Puerto Rico Housing Authority instituted, in the District Court of Arecibo, a condemnation proceeding against Carmelo J. Colón and others. On October 20, 1944, at the instance of the plaintiff Authority, the lower court entered an order declaring that the dominion title to the property sought to be condemned had become vested in the plaintiff Authority from the time—October 18, 1944—when said Authority filed the declaration of taking and deposited in court the sum of $14,828.25; that the defendants were entitled to a just compensation, which would be determined in the same proceeding; and that the Authority was entitled to the possession and use of the property, the defendants being bound to surrender immediately the property to the plaintiff.

On March 20, 1947, the defendants filed a "Motion Requesting the Reversion of the Title and Possession of the Property," alleging as grounds therefor, that the final order in the condemnation proceeding was rendered on November 8, 1945; that at the time the motion was filed, the plaintiff Authority had not used the property condemned, nor had the defendants used the money deposited, which was still in the office of the clerk of the court; that according to § 7 of the Eminent Domain Act, as amended by Act of March 12, 1908,[1]

---

[1] "Section 7.—In all cases of condemnation, sale, transfer or voluntary alienation of property for the performance of a work of public utility, whenever such work is not completed within the time fixed by the concession or franchise, or, in case no time is so fixed, within the term of six months, counting

if the petitioner does not make use of the property condemned within the time fixed by the concession or franchise, or in case no time is fixed, within the term of six months, counting from the date on which the final decision was rendered—November 8, 1945—the party dispossessed may recover the property upon returning the amount received. The defendants prayed that the restoration of the property to the persons dispossessed be ordered and that the money deposited be returned to the plaintiff Authority. The plaintiff objected and alleged that the Authority is a branch of the Government; that the provisions of said § 7 refer to condemnation proceedings pursuant to a concession or franchise granted to a public service company; that it has not been the intention of the lawmaker to impose restrictions on the sovereign or its agencies; that the time limitation established by § 7 is applicable only to public service companies, in order to compel them to perform the work of public utility within a reasonable time; and, lastly, that in accordance with the second paragraph of subdivision "H" of § 8 of Act No. 126 of May 6, 1938,[2] creating the Puerto Rico Housing Authority, no provision of law with respect to the acquisition, operation, or disposition of property by other public bodies shall be applicable to any Authority unless the Legislature shall specifically so state. On June 4, 1947, the lower court made an order directing the Authority to restore to the defendants the title to, and possession of, the property and acknowledging the right of the Authority to withdraw the sum deposited in court.

The Authority moved for a reconsideration of the order, and advanced the additional grounds: (a) that the order of October 20, 1944, vesting the title, was an interlocutory order

from the date on which the final decision ordering the condemnation was rendered, the party dispossessed or who voluntarily sold, transferred or encumbered his right of ownership shall have a right of action to recover the property condemned, returning the amount received."

[2] "No provisions of law with respect to the acquisition, operation or disposition of property by other public bodies shall be applicable to an authority unless the legislature shall specifically so state."

and not a final judgment which would put an end to the litigation and that, therefore, there was no basis for computing the term for the purpose of the supposed right of reversion acknowledged by the court; (b) that the possession granted to the plaintiff was purely symbolical, because as a matter of fact the plaintiff never took possession of the property condemned and the defendants continued in possession thereof, refusing to receive the sum deposited or to permit the entry of the employees of the Authority; and (c) that the Authority has already prepared all the plans and has the necessary funds for the development of the project for which the condemnation was made. In opposing the reconsideration sought, the defendants alleged that the plaintiff Authority took legal and actual possession of the property condemned by virtue of the order rendered by the lower court on February 16, 1945, relative to the possession, and that ever since that time the plaintiff has been in the actual and effective possession of the realty, entering into the property every time it has wished to do so without any objection on the part of the defendants. It is an admitted fact, and the lower court so stated in the decision under review, that, although almost three years have elapsed since the title had been transferred to it, the plaintiff Authority had not carried out any work whatever in the property condemned.

The reconsideration was denied, and the plaintiff thereupon moved for a judgment dismissing the complaint, in order to appeal to this Court. The lower court rendered a "Judgment Regarding Restoration of Property," whereby it ratified the order of June 4, 1947, and ordered the restoration without decreeing the dismissal of the complaint. Claiming that it had doubts as to whether said judgment was appealable, the plaintiff requested a supplemental judgment dismissing the complaint. The lower court refused such request, for it considered that it would be senseless to dismiss the complaint, inasmuch as the latter had been sustained immediately after

it was filed and the order for taking possession was issued. On July 1, 1947, the plaintiff Authority filed its notice of appeal, but having doubts as to whether the judgment was appealable, on the 24th of that same month, it filed a petition for certiorari to review the proceedings had in the lower court.

Since appeal No. 9584, taken by the plaintiff Authority, has been perfected and finally submitted to us, and since the questions involved in that appeal are the same as those raised in the certiorari proceeding, we will consider both proceedings as if they formed a single case.

The first error charged against the respondent court is that of having construed the provisions of § 7 of the Eminent Domain Act, *supra,* in the sense that they are applicable to the Puerto Rico Housing Authority, which is an agency or instrumentality of the Government of Puerto Rico.

The petitioner urges that for said § 7 to be applicable it is indispensable that the following elements should be present: (*a*) that a private property has been purchased or condemned for a work of public utility; (*b*) that the work is to be carried out by virtue of a *concession or franchise;* and (*c*) that the work has not been completed within the time fixed in the concession or franchise, or in case no time is fixed, *within the term of six months, counting from the date on which the final decision ordering the condemnation was rendered;* and that, since the public service companies are the only bodies which act under concessions or franchises, it is to them that the provisions of § 7 should be applied and not to the agencies or instrumentalities of the Government, which do not act on the basis of a concession or franchise.

The first question to be considered and decided is whether or not the Puerto Rico Housing Authority is bound to comply with the provisions of the Eminent Domain Act.

The first paragraph of § 2 of the Organic Act provides that "No law shall be enacted in Puerto Rico which shall deprive any person of life, liberty, or property without due

process of law . . . ''; and the ninth paragraph thereof, that ''Private property shall not be taken or damaged for public use except upon payment of just compensation ascertained in the manner provided by law.''

Section 1 of the Eminent Domain Act of March 12, 1903, provides ''That no person shall be deprived of his property, either in whole or in part, except in accordance with the provision of Section 355 of the Civil Code (§ 282 of the Civil Code, 1930 ed.), and of this Act.''

Section 282 of the Civil Code, 1930 ed., provides that ''No person shall be deprived of his ownership, except it be by a competent authority and *for a justified purpose of public utility,* and after having been properly indemnified.'' (Italics ours.)

''Eminent Domain'' is the right or power of the nation or the state, or of those to whom the power has been lawfully delegated, to condemn private property for public use. It is an inherent and necessary attribute of sovereignty, which exists independent of constitutional provisions and is superior to all other property rights. It is a power which lies in the state, but in order that it may be exercised, legislative action is necessary to point out the occasions, the form and manner for its exercise, and the agencies which may make use of this extraordinary power. The power to condemn private property for public use may be exercised either directly by the Government or through the creation by the Legislature of a corporate entity which shall act by virtue of a delegation of said power. And it is unnecessary to say that if the state may condemn property only when such property is necessary for public use, a corporation which acts by delegated authority from the state is subject to that same restriction.

On May 6, 1938, there was approved Act No. 126 of the Insular Legislature (Laws of 1938, p. 253), entitled ''Housing Authorities Law.'' Section 2 of that Act, after describing the conditions prevailing in the Island due to the shortage

of safe and sanitary dwellings for persons of low income, set forth, among other things, the following:

"(c) that the clearance, replanning and reconstruction of the areas in which insanitary or unsafe housing conditions exist and *the providing of safe and sanitary dwelling accommodations for persons of low income are public uses and of public utility* and constitute purposes for which public money may be spent *and private property acquired* . . . ; (d) *that it is in the public interest* that work on projects for such purposes be commenced as soon as possible in order *to relieve unemployment* which now constitutes an emergency;... " (Italics ours.)

By § 4 of that same Act a public body corporate and politic, which shall be known as "Puerto Rico Housing Authority," was created. By subdivision (a) of § 8, the Legislature granted to the corporation thus created power to "sue and to be sued" and, by subdivision (d) of that same Section, authorized it "to acquire by the exercise of the power of eminent domain any real property."

The Act creating the Housing Authority further provides as follows:

"Section 12.—An authority shall have the right to acquire *by the exercise of the power of eminent domain* any real property which it may deem necessary for its purposes under this Act after the adoption by it of a resolution declaring that the acquisition of the real property described therein is necessary for such purposes. *An authority may exercise the power of eminent domain pursuant to the procedural provisions of an Act entitled 'An Act to provide for the condemnation of private property for the purposes and under the conditions therein named,' approved March 12, 1903,* and acts amendatory thereof or supplementary thereto; or it may exercise the power of eminent domain in the manner provided by any other applicable statutory provisions for the exercise of the power of eminent domain . . . " (Italics ours.)

The plaintiff Authority is therefore a public corporation organized by the state for the development of projects for the construction of safe and sanitary dwellings for persons of low income. In order that the corporation may carry out said

"public uses and of public utility" the Legislature has expressly vested it with the power of acquiring by purchase or condemnation the real property which might be necessary for the development of said projects. However, the grant or delegation of the power of eminent domain by the Legislature to the plaintiff Authority, is not of an absolute character but subject to the restrictions and limitations which in clear and precise terms § 12, *supra*, establishes. The Authority is entitled to condemn the real property which it might consider necessary for the public purposes specified in the Act, but it must do so "through condemnation proceedings" provided by the "Act to provide for the condemnation of private property for the purposes and under the conditions therein named, approved March 12, 1903." And we have already seen that said Act provides in its § 7, *supra*, that the title and the possession shall be restored to the dispossessed party when the work is not performed within the time fixed in the concession or within the term of six months "counting from the date on which the final decision ordering the condemnation was rendered."

The decisions cited by the respondent in support of its contention that, since the fee simple absolute had become vested in the Authority, the property can not revert to its former owners when it ceases to be used for the purpose for which it was condemned, are not applicable to the case under consideration. Here the restoration of the property is not claimed because the public use has ceased, but because the property has not been devoted, within the term prescribed by law, to the public use for which it was condemned.

Our statute, the Eminent Domain Act, with which the plaintiff Authority must comply, by express mandate of § 12 of the Act creating said Authority, is not silent as to the term within which the property condemned should be devoted to the public use. If said term is binding, as we think it is, on the Government of Puerto Rico, it necessarily is binding

on any governmental authority, agency, or instrumentality, or any public service corporation which exercises the power of eminent domain by delegation or concession from the Insular Government. We have no doubt whatsoever that such was the intention of the Legislature when it provided, in § 12, *supra*, that the Housing Authority "may exercise the power of eminent domain pursuant to the procedural provisions of an Act entitled 'An Act to provide for the condemnation of private property for the purposes *and under the conditions* therein named.'" (Italics ours.)

After a careful examination of the above-mentioned Acts, we are of the opinion, and so hold, that the Puerto Rico Housing Authority is a public corporation which, in exercising the power of eminent domain, acts under an express grant or delegation of that power by the Legislature, and in virtue thereof and by express mandate of § 7 of the Act creating the corporation, is subject to the provisions of § 7 of the Eminent Domain Act, *supra*.

We have already seen that, in accordance with § 7 of the Eminent Domain Act, the defendant has a right of action to recover the property condemned, if the work of public utility is not performed "within the term of six months *counting from the date on which the final decision ordering the condemnation was rendered.*" Now we have to consider and decide whether the lower court interpreted the law correctly or whether it erred in deciding that the order of October 20, 1944, whereby the ownership and possession of the property condemned was transferred to the Housing Authority, is the final decision ordering the condemnation to which § 7 of the Eminent Domain Act, *supra*, refers; and that the term of six months for the execution of the works began to run on the date of the rendition of said order.

In accordance with the prayer contained in the "Declaration of Taking," filed by the plaintiff Authority, the lower court entered the order of October 20, 1944, whereby it de-

creed; (*a*) that the title to the property in fee simple absolute became vested in the Authority from the time the declaration of taking was filed and the sum of $14,828.25 was deposited, subject to readjustment; (*b*) that "the property is condemned and the title is vested in the Authority; (*c*) that the Authority is now entitled to the ownership, possession, and use of the property condemned; and (*d*) that the cause would remain open for any further order, judgment, or decree which might be necessary in connection therewith."

The Eminent Domain Act is a procedural statute, which establishes the procedure that should be followed in the courts in order to deprive a person of his private property for the purpose of devoting it to a public use. The original Act, approved on March 12, 1903, contained no provision which would permit the plaintiff to acquire or take possession of the property sought to be condemned pending the proceedings, on depositing in court the amount estimated as just compensation. It was on April 1, 1941, that Act No. 2 (Session Laws, 1941, ((1) p. 283), was approved, whereby § 5A was added to the original Act, and said Section provides that the plaintiff "may file in the same cause, at the time the petition is filed *or at any time before judgment is rendered,* a declaration of taking for the acquisition and material delivery of the property the object of condemnation, . . . "; that as soon as deposit is made of the amount estimated as just compensation, "title to the said property in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in The People of Puerto Rico . . . or in the agency or instrumentality of The People of Puerto Rico which may have requested the expropriation, . . . and the right to just compensation for the same shall vest in the person or persons entitled thereto"; and that "said compensation shall be ascertained *and awarded in said proceeding and established* by judgment therein." Section 5(*b*) which was added by Act No. 19 of 1942 (2nd

and 3rd Special Sessions, page 82), provides that *"In any judgment* rendered in a condemnation proceeding . . . in which the amount determined by the court as just compensation for the property . . . is greater than the amount fixed by the plaintiff or deposited in the court as just compensation for such property . . . , The People of Puerto Rico shall pay the amount of the difference between the sum thus fixed by the plaintiff and deposited by him in the court and the sum that for the purpose has been determined by the court as just compensation for the property or the rights thereon, the object of such proceeding, etc.'' Said Section further provides that "As soon as the judgment referred to in the preceding paragraph is final and unappealable,'' the Treasurer shall pay such difference chargeable to the Insular Treasury.

The remedy granted by §§ 5(*a*) and 5(*b*), *supra,* for the transfer of the dominion title and the taking possession of the property sought to be condemned, is a provisional remedy to which the plaintiff may resort, if he so elects, at any time before the judgment ending the litigation is rendered. The transfer of the title in fee simple absolute and of the right to take possession of the real property is completed as soon as the declaration of taking is filed and deposit is made in court of the amount estimated as compensation, without there being any necessity for the court to so order. The transfer is effected, by operation of law, when the petition is filed and the deposit is made. However, the practice of obtaining a judicial order approving the transfer of the ownership is generally followed in order that the same may serve as evidence that the Act has been complied with for the purpose of the recording of the title in the registry of property. *People* v. *Registrar,* 64 P.R.R. 125; *U. S.* v. *72 acres of land, more or less, situate in Oakland, Alameda County,* 37 F. Supp. 297 (D. C. Cal., 1941).

The final decision in a condemnation proceeding can be no other than that in which the court, after hearing the evidence introduced by the parties as to the value of the property sought to be condemned, fixes the amount which the plaintiff should pay to the defendant as just compensation for the property of which he has been deprived. Since said just compensation may be an amount greater than that deposited by the plaintiff upon filing his declaration of taking, and since it is necessary to introduce evidence in order to determine the amount which the plaintiff will be bound to pay, it must be concluded that the order approving the transfer of the title and the right to take possession is an interlocutory order and not a final and definitive judgment which puts an end to the litigation. See *Catlin* v. *United States,* 324 U. S. 229.

In the instant case, the plaintiff Authority filed its declaration of taking and made the deposit of the sum which it estimated as just compensation for the property sought to be condemned, but neither the plaintiff nor the defendants took any step tending to obtain from the court a final judgment fixing the amount which, as just compensation, the plaintiff should pay to the defendant for the property in question.

Since no final judgment has been rendered, the term of six months fixed by § 7 of the Eminent Domain Act for the reversion of the title to the defendants, has not started to run. The motion praying for the reversion of the title and possession of the real estate was prematurely filed; and the lower court erred in sustaining it.

The order under review, issued on June 4, 1947, will be set aside, the judgment appealed from, rendered on June 27, 1947, will be reversed, and the case remanded to the lower court for further proceedings not inconsistent with this opinion.